WEILER and others *v.* DREYFUS and others.[1]

(*Circuit Court, E. D. Louisiana.* 1886.)

PLEDGE—INSOLVENCY—ACTION AT LAW.

D., an insolvent, made a dation on payment of a stock of goods to M., for a lawful indebtedness to M., who knew of D.'s insolvency. The goods were delivered to M., who pledged and delivered the same to E. for $15,000; $4,000 in cash, and E.'s two promissory notes, payable 60 and 90 days after October 27, 1883. D.'s creditors, these complainants, attached the goods in E.'s hands as the property of D. E. intervened, claiming the goods under his contract of pledge from M. D.'s creditors answered E.'s intervention, alleging that the giving in payment by D. to M., and the pledge to E., were all schemes in aid

[1] Reported by Talbot Stillman, Esq., of the Monroe bar.

of the fraud upon D.'s creditors; that all the transactions were mere simula-tions in fraud of creditors; that if any of the contracts relied on by defend-ants were real, they were still in fraud of D.'s creditors. E.'s intervention was tried by a jury. The court on that trial would not allow any evidence except as to simulation or no simulation to be heard by the jury, because, if the contracts sought to be avoided were real ones, though in fraud of D.'s creditors, such matters could be heard only on a bill in equity; that the con-tracts, if real ones, could not be revoked, and the goods subjected to the claims of injured creditors in an action at law. The complainants, being defeated in their suit at law, after the two notes were paid by E., filed this bill to sub-ject the goods pledged to him to the claims of the creditors of D. The court, on hearing the case, declined to give any relief against E. The complainants, in argument of their motion for a new hearing, say: "Admitting the facts to be as the court found them to be, E. paid the two notes after the suit at law, in which he was informed of the fraud on D.'s creditors, was filed, and, the payments being in aid of such a fraud, he is still liable to these complainants for the amount of the notes; that the suit at law charged him with notice not to pay the notes except at his peril." *Held,* that the suit at law could not op-erate, in law or in equity, as such a notice to E., because E.'s contract of pledge was not a simulation, but a real contract, and he should be protected in his payment of the notes; that a suit cannot be said to give notice to a defendant of any thing or charge beyond the matters that can be tried in such a suit.

In Equity.

*D. C. & L. Labatt, C. T. Florance,* and *Theard & Bros.,* for com-plainants.

*Singleton & Brown* and *Morris Marks,* for defendants.

BOARMAN, J. The proof in this case shows that before October 27, 1882, Dreyfus lawfully owed Meyers, one of the defendants, his son-in-law, about $26,000. That Dreyfus was then insolvent, and largely in debt, both of which facts were known to Meyers. That Dreyfus, on October 27th, gave, in payment to Meyers, $20,000 worth of goods, making to him a complete delivery of the same. That said goods were stored in a warehouse, for account of Meyers, to whom the warehouse receipts were given. That Meyers, not then insolvent, made a real pledge of the goods to Erman, one of the defendants, for $15,000; $4,000 in cash, and his two negotiable notes for like sums, payable 60 and 90 days after date. The 60-day note was at once ne-gotiated by Meyers, and the last one was paid by Erman at the bank when it became due. That Erman was not at any time an interposed person to aid Dreyfus and Meyers, whatever their understandings and purposes may have been in making their transactions. That the goods, at the time they were pledged, were in the possession and ownership of Meyers, whatever may have been the rights of Dreyfus' creditors upon them; and the pledge was entered into by himself and Meyers in good faith, and for a valuable consideration. That the giving in payment by Dreyfus to Meyers was not a simulated but a real transaction.

In addition to this statement of facts, the record shows that cer-tain suits, on the law side of this court, were filed within the several days following the contract of pledge between Erman and Meyers. In these suits it was alleged that the transactions between Dreyfus

and Meyers and Erman were simulated, and in fraud of complainants, the creditors of Dreyfus. In the suit at law (*Weiler* v. *Dreyfus*) Erman intervened, claiming the goods under the agreement of pledge. The issues growing out of Erman's intervention were tried by a jury; the court in that case allowing only the matter of simulation or no simulation to be heard. The court ruled that the issue as to whether the pledge was a real one, though fraudulent, could not be heard in an action at law. On the matter of simulation the jury found for the intervenor. After the trial of that issue, and some days after the 90-day note had been paid, the complainants filed this bill in equity, setting forth, as it does, that the pledge to Erman, though a real one, was in fraud of the rights of complainants, the injured creditors of Dreyfus, and prayed that the whole of the transactions between Dreyfus and Meyers, and between Meyers and Erman, be annulled and revoked, and the goods fraudulently pledged be subjected to the claims of these complainants. On this statement of facts, which seems to be all that is necessary for the purposes of hearing and passing upon the issues in this case, the court some days ago, entered a decree for the complainants, so far as their claim against Dreyfus and Meyers were concerned, but refused any relief as against Erman. The matter as to Erman is now being heard on a motion for a new hearing.

The complainants, admitting for the sake of argument that this statement is sustained by the proof, contend that in equity they are entitled to relief as against Erman. They contend that the suits they filed on the law side of this court immediately after the said several transactions between Dreyfus and Meyers, and between the latter and Erman, operated, in law and in equity, to charge Erman with notice that he could pay the two notes only at his peril; that payment, if made by him after the petitions in those suits were served on him, as one of the parties charged therein with aiding in the fraudulent schemes, would be against good conscience and equitable dealing. And they say, further, that, notwithstanding the fact that he has or may have paid the two notes, he should be held liable to account to these complainants for the credit price, $10,000.

This case, upon the facts as stated by the court, must now be decided upon the matter of law so learnedly and earnestly presented by the senior counsel for complainants. What effect, in the way of legal notice to Erman, should be given to the filing those suits at law? With what notice did the allegations in the petitions served on Erman charge him, and to what extent, in law and in equity, is he affected and bound by such notice?

When the issues affecting Erman's rights in and relations to the transactions which complainants now seek to avoid were tried, the court held that an action to set aside the contract of pledge, on account of its being a mere simulation, could be tried only on the law side of this court; that if the plaintiff sought to avoid the pledge contract

as against them because, though real, it was in fraud of Dreyfus' creditors, the suit could be heard only in equity. The ruling of the court made then I think is sustained by authority. In the suit at law, if only the charge that the contract of pledge was a mere simulation could be tried, can it be said that he was charged with notice of anything beyond the fact that he had no right to the goods because his pledge was not a real contract, but a mere simulation? The service of the petition on him was like saying to him: "You must not pay those notes if your contract of pledge was in aid of the simulated transactions and schemes which we say Dreyfus entered into for the purpose of swindling his creditors, and that if you do pay them in aid of such simulated transactions, and they, on the trial of these suits, are proved up against you, the law will make you pay the same amounts to us."

Under the doctrine of notice contended for by complainants' counsel, can it be said in law that Erman was charged to take notice of anything beyond that which could be passed on in the court from which the notice, by way of the petitions, emanated? It may be said that those suits at law set up or contained two causes for avoiding the pledge made by Meyers to Erman: *First*, that it, the pledge contract, was a mere simulation, in fraud of plaintiffs, and should be set aside; *second*, that, granting the pledge contract was a real one, it was in fraud of Dreyfus' creditors, and, as to plaintiffs, it should be revoked. But if it is the settled practice in this court that only the matter of simulation or no simulation could be tried in a suit at law, and the other matter could be tried only in an equity suit, it seems to follow as a conclusion that the suit operated as a legal notice to Erman that he would be called on only to defend himself against the charges which could be tried and passed on in the trial of that suit. Erman knew that his contract with Meyers was not a simulation, as between himself and Meyers, and he knew, or should have known, because it is the law, that the question as to whether it was a real, though fraudulent, contract of pledge could not be inquired into in the suit pending against him on the law side of the court, and the effect of the notice, at most, could be only to say to him that he should not pay if the contract of pledge was a mere simulation. The plaintiffs in the several suits at law chose to proceed for relief in an action at law, and the result of the trial of the only issue which could be heard in those suits was that Erman's contract was a real one, and not a simulation.

After the last of the two notes had been paid by Erman, this bill in equity was filed. The complainants now pray for relief against Erman, because his contract with Meyers was not a simulation, as was contended for in the suits on the law side of the court, but it was a real contract, which was entered into by Erman to aid Dreyfus and Meyers in their schemes to defraud Dreyfus' creditors. If the notes were now outstanding against Erman, this bill, it being admit-

ted that the purpose of Dreyfus in giving the goods in payment to Meyers was to defraud his creditors, might forbid Erman, except at his peril, to pay the notes, because in doing so he would be aiding in the perpetration and consummation of a fraud on these complainants. The property pledged to Erman consisted of such movable and perishable goods as are easily and frequently interchanged in the active pursuits of commerce. Meyers' possession and ownership of the goods, whatever may have been the rights of Dreyfus' injured creditors on them, was complete as against Dreyfus. The giving in payment to Meyers was not in itself a void contract. Dreyfus intended to give, and did give, the goods to Meyers for a lawful indebtedness to the latter, and the contract, as between them, was completed when Erman became the pledgee of Meyers, and it could not be treated as a simulation by Dreyfus creditors, even if they had had a judgment against Dreyfus, and had pursued the goods while they were in Meyers' possession. But when the goods went out of Meyers' possession, under a *bona fide* contract with Erman, no relief in an action at law could be had against these defendants, and it would be carrying the law of notice too far to say that Erman can now be made to pay the two notes over again to any one.

Motion for new hearing denied.